**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                              :
LUCA GUARDAVACARRO and        :
JOSEPHINE GUARDAVACARRO,       :
                              :
                  Plaintiffs, :     Civil Action No. 16-8796 (FLW)(DEA)
                              :
         v.                   :
                              :          OPINION
                              :
THE HOME DEPOT, THE HOME      :
DEPOT, INC., HOME DEPOT U.S.A.,:
INC., WERNER HOLDING CO.,      :
NEW WERNER HOLDING CO., INC.,  :
and NEW WERNER HOLDING CO., LLC,:
                              :
                  Defendants. :
_____:
```

**WOLFSON, United States District Judge:**

Presently before the Court is Defendants The Home Depot, The Home Depot, Inc., Home Depot U.S.A., Inc., Werner Holding Co., New Werner Holding Co., Inc., and New Werner Holding Co., LLC's (collectively, "Defendants") motion to dismiss all but Counts I and V of Plaintiffs Luca Guardavacarro ("Plaintiff" or "Luca") and Josephine Guardavacarro's ("Josephine")[1] Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  The Amended Complaint alleges that Luca sustained permanent injuries when he fell off of a defective ladder that was designed, manufactured, and distributed by Defendants. The Amended Complaint asserts the following seven causes of action

---

[1] The only claim brought by Josephine is Count V, the loss of consortium and/or services claim. Defendants do not move to dismiss that Count.  Therefore, all references within this Opinion are to the claims of her husband, Luca; and accordingly, will be addressed as "Luca" or "Plaintiff," singularly.

against Defendants: (1) violation of the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 *et seq.* ("NJPLA"); (2) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("NJCFA"); (3) breach of implied and express warranties; (4) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"); (5) a claim for loss of consortium and/or services on behalf of Josephine, and (6) a common law negligence claim.

For the reasons set forth below, Defendants' motion is granted in part and denied in part, as follows: Plaintiff's claims pursuant to the NJCFA (Count II), for breach of implied warranty (Count III), and negligence (Count VI), insofar as it pertains to negligent manufacture or design, are dismissed with prejudice as subsumed by the NJPLA. The motion to dismiss is denied as to Plaintiff's claims for breach of express warranty (Count III) and for violation of the MMWA (Count IV). Plaintiff's negligence claim (Count VI), insofar as it asserts a claim for negligent transport, moving, or storage, is dismissed without prejudice, and Plaintiff is given leave to amend that claim within fifteen (15) days of the date of the Order accompanying this Opinion. Finally, Defendants' motion to dismiss is granted as to Plaintiff's request for punitive and treble damages, and denied as to Plaintiff's request for an award of attorney's fees under Count IV.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On a motion to dismiss, the Court reviews the Complaint by taking its allegations as true. On December 1, 2016, Plaintiff filed the Amended Complaint against Defendants, alleging that Luca sustained personal injuries when he slipped and fell off of a defective ladder (the "Ladder"). *See* Am. Compl. ¶ 1, ECF No. 3. Defendants The Home Depot, The Home Depot, Inc., and Home Depot U.S.A., Inc. (collectively "Home Depot") are corporations engaged in the sale of home improvement supplies, including tools, construction products, and ladders. *Id.* at ¶¶ 2-3. Defendants Home Depot Inc. and Home Depot U.S.A., Inc. own and operate The Home

Depot store located at 197 Route 27 West, Stafford Township, New Jersey (the "Store"). *Id.* at ¶ 4. Defendants Werner Holding Co., New Werner Holding Co., Inc., and New Werner Holding Co., LLC (collectively, "Werner") are corporations engaged in the design, manufacturing, packaging, shipping, and distribution of aluminum and fiberglass ladders. *Id.* at ¶¶ 5-8.

On January 30, 2015, Plaintiff purchased the Ladder from the Store. *Id.* at ¶ 12. The Ladder was developed, manufactured, designed, and distributed by Werner. *Id.* at ¶ 17. Plaintiff alleges that the Ladder was labelled as containing "Anti-Slip Safety Shoe/Feet," capable of supporting 225 pounds. *Id.* at ¶¶ 13, 15, 52. Plaintiff further alleges that on January 31, 2015, upon using the Ladder for the first time, one of the Anti-Slip Safety Shoes came loose and detached from the Ladder, as a result of its improper design or manufacture, causing him to fall to the ground and fracture his right elbow. *Id*. at ¶ 13. As a result of his injuries, Plaintiff was required to undergo open reduction internal fixation surgery ("ORIF"). *Id.*

Plaintiff alleges that Defendants placed the Ladder into the stream of commerce, despite the fact that Defendants knew, or reasonably should have known, that the Ladder was unreasonably dangerous when used by consumers in a foreseeable manner. *See id.* at ¶¶ 20-23. To that end, Plaintiff avers that while Defendants marketed the Ladder as capable of supporting a 225-pound "load capacity," and as containing Anti-Slip Safety Shoe/Feet that "rest flat on slip resistant pad[s] or [are] held in spur position with [the] SHU-LOCK feature," the Ladder was defective in that its shoes were not held in position and it was unable to support Plaintiff's weight of approximately 190 to 195 pounds. *Id.* at ¶ 52. Plaintiff further alleges that Defendants engaged in deceptive conduct by taking active steps to conceal these defects, with the intent that consumers, including Plaintiff, would rely on Defendants' misrepresentations in purchasing the

Ladder. *See id.* at ¶¶ 34-36. In that regard, Plaintiff alleges that he would not have purchased the Ladder had Defendants disclosed the fact that it was defective. *Id.* at ¶ 37.

Based upon these allegations, the Complaint asserts seven causes of actions against Defendants, arising out of violations of statutory and common law. Count I asserts a claim pursuant to the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 *et seq.* ("NJPLA"). *Id.* at ¶¶ 16-25. Count II asserts a claim pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("NJCFA"). *Id.* at ¶¶ 26-39. Count III asserts a claim for breach of implied and express warranties. *Id.* at ¶¶ 40-48. Count IV assert a claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"). *Id.* at ¶¶ 57-63. Count V asserts a loss of consortium and/or services claim on behalf of Josephine, and Count VI asserts a common law claim for negligence.[2] *Id.* at ¶¶ 64-70. On January 17, 2017, Defendants filed the instant motion to dismiss, which Plaintiff opposes.[3]

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must first separate the factual and legal elements of the claims, accepting the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences are drawn in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). To survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief

---

[2] It is unclear, from the Court's review of the Amended Complaint, whether Plaintiff only seeks to allege that Defendants were negligent in transporting, moving, and storing the Ladder, or whether Plaintiff also asserts that Defendants negligently designed or manufactured the Ladder. For the purposes of the instant motion, the Court will address each of these potential negligence theories separately.

[3] Defendants do not move to dismiss the NJPLA (Count I) and loss of consortium and/or services (Count V) claims.

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    DISCUSSION

Defendants argue that because Plaintiff has asserted a claim under the NJPLA, he is precluded from asserting claims: (i) pursuant to the NJCFA (Count II); (ii) for breach of implied warranty (Count III); and (iii) for common-law negligent design and manufacture (Count VI). In addition, Defendants argue that Plaintiff's claims for breach of express warranty (Count III) and

under the MMWA (Count IV) must be dismissed for failure to state a claim upon which relief can be granted. Defendants also move to dismiss Plaintiff's requests for punitive damages, attorneys' fees, and treble damages, on the grounds that those awards are not available under the NJPLA or on a breach of express warranty claim. The Court will examine each of those arguments in turn.

### A.     Subsumption Under The NJPLA

Before determining the sufficiency of the Amended Complaint's allegations, the Court must first resolve whether Plaintiff's assertion of a claim pursuant to the NJPLA subsumes his NJCFA, breach of the implied warranty, and negligence claims. The Court answers that question in the affirmative.

The New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 *et seq.*,[4] was enacted "to limit the expansion of products-liability law" and "to limit the liability of manufacturers so as to balance[] the interests of the public and the individual with a view towards economic reality." *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 48 (1996) (internal quotations and citations omitted). To strike the appropriate balance of interests, the NJPLA "established the sole method to prosecute a product liability action," and after its enactment, "only a single product liability action remains." *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398-99 (App. Div. 1991). In that regard, the Third Circuit has explained that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). Indeed, "the NJPLA generally subsumes common law product

---

[4] To state a prima facie case for violation of the NJPLA, a plaintiff must demonstrate "that the product was defective, that the defect existed when the product left the defendant's control, and that the defect caused injury to a reasonably foreseeable user." *Becker v. Baron Bros.*, 138 N.J. 145, 151 (1994) (quoting *Feldman v. Lederle Labs.*, 97 N.J. 429, 449 (1984)).

liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Id.; see In re Lead Paint Litig.,* 191 N.J. 405, 436, (2007) (finding that the NJPLA accomplishes its liability-limiting function by creating "one unified, statutorily defined theory of recovery for harm caused by a product.").

The New Jersey Supreme Court has explained that "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *In re Lead Paint Litig.*, 191 N.J. at 436-37. The rule that the NJPLA subsumes almost all other causes of action stems from the language of the statute itself. Section 2A:58C-2 of the NJPLA provides as follows:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. § 2A:58C-2. Under the definitional section of the NJPLA, "harm" is defined as: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J.S.A. § 2A:58C-1(b)(2). Furthermore, a "product liability action" is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C-1(b)(3).

To determine whether the NJPLA subsumes a particular claim, the court must ascertain the type of harm that a plaintiff is alleging; namely, whether the harm involves property damage or bodily injury caused by the culprit product, or whether the harm was solely to the defective product itself. Stated differently, "courts do not simply determine whether or not the victim's injury was literally 'caused by a product,'" but rather, "courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action." *New Hope Pipe Liners, LLC v. Composites One, LCC*, No. 09-3222, 2009 WL 4282644, at \*2 (D.N.J. Nov. 30, 2009); *see In re Lead Paint Litig.*, 191 N.J. at 437 ("Were there any doubt about the essential nature of the claims asserted by plaintiffs, a careful reading would demonstrate that they sound in products liability causes of action."). Indeed, even "quasi-products liability claim[s] . . . would properly be brought only under the PLA." *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 418 (D.N.J. 2016). However, "when the 'essential nature' of the claim is not that of a PLA claim, 'the plaintiff may maintain a separate cause of action.'" *Id.* (citation omitted).

In recognition of the broad scope of the NJPLA, New Jersey federal and state courts have consistently dismissed product liability-related claims based on common law theories when the heart of those theories is the potential "harm caused by a product." *See, e.g.*, *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) (dismissing negligence claim, stating that "under New Jersey law negligence is no longer viable as a separate claim for harm caused by a product"); *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 528–29 (D.N.J. 1999) (dismissing common-law claim for negligent manufacture); *Reiff v. Convergent Techs.*, 957 F. Supp. 573, 583 (D.N.J. 1997) (dismissing negligence and implied breach of warranty claims); *McWilliams v. Yamaha Motor Corp. USA*, 780 F. Supp. 251, 262 (D.N.J. 1991) (dismissing

negligence and breach of implied warranty claims), *aff'd in part, rev'd in part on other grounds*, 987 F.2d 200 (3d Cir. 1993); *Green v. Gen. Motors Corp.*, 310 N.J. Super. 507, 517 (App. Div. 1998) (stating that "causes of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action" under the NJPLA).

Moreover, courts have also found that the NJPLA subsumes common law and statutory fraud claims so long as the harm alleged was caused by a product. *See Brown v. Philip Morris, Inc.,* 228 F. Supp. 2d 506, 517 (D.N.J. 2002) (fraud claim preempted by the NJPLA when the defendant's alleged misrepresentations resulted in "harm caused by a product."); *Sinclair v. Merck & Co.*, 195 N.J. 51, 66 (2008) (statutory consumer fraud claim subsumed by the NJPLA when the "[t]he heart of plaintiff's case [was] the potential harm caused by Merk's drug."); *McDarby v. Merck & Co.,* 401 N.J. Super. 10, 95–96 (App. Div. 2008) (statutory consumer fraud claim subsumed by the NJPLA because "the gravamen of [the] claim was that Merk marketed Vioxx fully aware of its cardiovascular risk [and] made misrepresentations[ ] and ... omis[ssions]" in connection with its marketing). Indeed, in *Lopienski v. Centocor, Inc.,* No. 07–4519, 2008 WL 2565065 (D.N.J. Jun. 25, 2008), this Court found that the plaintiff's causes of action for negligence, breach of implied warranty, negligent and fraudulent misrepresentation, statutory consumer fraud, and fraudulent concealment were subsumed by the NJPLA, because they were premised on physical injuries caused by a product. *See id.* at *1 n. 2.

Here, the Court's review of the Amended Complaint leaves no doubt that the essence of each of the claims asserted in Counts II, III, and IV sounds in products liability. Tellingly, the first two paragraphs of the factual background section of the Amended Complaint characterize this case as a "personal injur[y]" case, where Plaintiff sustained injuries as a result of an "improper[ly] designed and/or improper[ly] manufactur[ed]" Ladder. Am. Compl. ¶¶ 12-13.

Because claims for personal injuries sustained as a result of using a product meet the NJPLA's definition of "harm," Plaintiff's claims fall within the purview of the NJPLA. *See* N.J.S.A. § 2A:58C-1(b)(2). Thus, as explained below, Plaintiff's NJCFA, breach of implied warranty, and negligent design and manufacture claims are subsumed by the NJPLA.

### 1.    NJCFA Claim (Count II)

Plaintiff argues that his NJCFA claim is not subsumed by the NJPLA because, in addition to his personal injury claims under the NJPLA, the NJCFA claim seeks economic damages for the lost value of the Ladder itself. Specifically, Plaintiff alleges that as a result of Defendants' failure to disclose the defects inherent in the Ladder, he received a product that was of a lesser value than what he reasonably expected at the time of purchase. *See* Am. Compl. ¶ 36. Plaintiff relies on a district court opinion, *Volin v. GE*, 189 F. Supp. 3d 411 (D.N.J. 2016), for the proposition that NJCFA claims are not subsumed by the NJPLA when plaintiffs allege that they did not receive what they paid for. However, *Volin* is distinguishable from the present case.

In *Volin*, the purchaser of a gas stove alleged that the stove's surface knobs were defective, because they would rotate when they were inadvertently jostled or bumped, causing the corresponding burner to release a stream of flammable gas into the purchaser's home. 189 F. Supp. 3d at 415. The purchaser filed a six-count complaint against the stove's manufacturer, asserting claims under the NJCFA, MMWA, NJPLA, and for unjust enrichment and breach of express and implied warranties. *Id.* at 411. In holding that the NJPLA did not subsume the purchaser's other theories, the court emphasized that the purchaser primarily alleged "deficiencies in the product itself," and that although the purchaser alleged "that gas was released into [her] home, there [were] no allegations of any physical damage, personal injury, or illness." *Id.* at 417. Rather, the court found that the purchaser's other claims alleged theories and

"harm" that fell outside of the scope of the NJPLA; *i.e.*, that they were "not disguised products liability claims." *Id.* at 418. The court explained that the "common theme of those other counts is not that the product caused harm to plaintiff or her property; it is that Volin did not get what she paid for. To that extent, then, Volin's CFA, implied warranty, and unjust enrichment claims would not be subsumed by the PLA." *Id.*

Unlike the purchaser in *Volin*, here, Plaintiff alleges that he sustained a personal injury as a result of using a defective product, a type of harm falling within the purview of the NJPLA. While Plaintiff alleges that Defendants took active steps to conceal the defects in the Ladder, knowing that Plaintiff would rely on those nondisclosures in purchasing the Ladder, and that Plaintiff thus received a product that was of a lesser value than what he intended to purchase, those allegations do not save his NJCFA claim. In that regard, the essence of Plaintiff's claimed harm is clearly not to the product itself. Rather, the claims arise out of the fact that Plaintiff was physically harmed as a result of an allegedly defective product that was designed, manufactured, and distributed by Defendants. That fact that Plaintiff attempts to mask his traditional products liability claims in the language of the NJCFA is unavailing. Therefore, because personal injury caused by a product falls within the NJPLA's definition of harm, *Volin* is inapposite, and Plaintiff's NJCFA claim is subsumed by the NJPLA.

Moreover, the claim of lost value in this case is not sufficiently distinguishable from the broad harm encompassed by the NJPLA. In *Felluer v. Tri–Union Seafoods, LLC*, No. 06–0688, 2010 WL 1490927 (D.N.J. Apr. 13, 2010), the court, addressing a similar argument to that made here, held that "[t]he fact that [the plaintiff] . . . seeks economic damages to reimburse her for the cost of the product (in addition to personal injury damages) does not change the fact that this is, in essence, a product liabilities claim." *Id.* at *5. There, the plaintiff brought claims under the

NJPLA and NJCFA, alleging that the manufacturer of albacore tuna containing harmful mercury compounds failed to warn and disclose the risks associated with consumption of that product. *See id.* at *1. The court, deriving its reasoning from the New Jersey appellate division decision in *McDarby*,[5] found that because the NJPLA's definition of harm covers virtually any economic harm caused by the allegedly defective product, a plaintiff should not be permitted to bring separate claims under the NJPLA and NJCFA, "as the [NJPLA] was intended to unify product liabilities causes of action into a single claim." *Id.* at *15–16 (citing *McDarby*, 401 N.J. Super. at 277–78). To that end, in rejecting the plaintiff's argument that her NJCFA claim was not subsumed by the NJPLA, the court observed that permitting the plaintiff to assert claims under both the NJCFA and NJPLA, whenever the plaintiff sought economic damages in the NJCFA claim, would effectively eviscerate subsumption under the NJPLA. *See id.* at *5 (recognizing such a theory would "permit the vast majority of Plaintiffs to assert claims under both the CFA and PLA.").

---

[5] The *McDarby* court also reasoned that permitting a plaintiff to assert claims under both the NJCFA and NJPLA would undermine the legislative intent behind the NJPLA's subsumption doctrine, by enabling plaintiffs to benefit from certain provisions in the NJCFA, including those providing treble damages and attorneys' fees, that were intentionally excluded from the NJPLA. *See McDarby*, 401 N.J. Super. at 278. That line of reasoning has been adopted by several courts in this district. *See Arlandson v. Hartz Mountain Corp.*, No. 10–1050, 2011 WL 2112494, at *11 (D.N.J. May 25, 2011) (dismissing claim for unjust enrichment where the complaint's "core issue" was the harmfulness of the defendant's product); *O'Donnell v. Kraft Foods, Inc.*, No. 09–4448, 2010 WL 1050139, at *3 (D.N.J. Mar.18, 2010) (plaintiffs' claim of lost value from purchasing the hot dogs was preempted by NJPLA, because those products' lost value resulted from "the increased risk of cancer [plaintiffs] allege[d] arises from consumption of [the] product ..."); *Smith v. Merial Ltd.*, No. 10–439, 2011 WL 2119100, at *4 (D.N.J. May 26, 2011) ("Plaintiffs attempt to classify their claims as non-product liability claims by alleging only economic damages related to the price of the product as opposed to damages related to the harm caused by the product. However, limiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the PLA.") (citations and quotations omitted).

Accordingly, based on the allegations in the Amended Complaint, any economic loss that Plaintiff suffered as a result of purchasing the Ladder arises solely under Plaintiff's NJPLA claim, and Plaintiff's proper recourse is through that claim. The type of harm alleged in Plaintiff's NJCFA claim falls squarely within the exclusive purview of the NJPLA, and as such, Count II is dismissed as subsumed by the NJPLA.

### 2. Breach of Implied Warranty and Negligence Claims (Counts III and VI)

Plaintiff also argues that his common law claims for breach of implied warranty and negligence should not be dismissed at this stage. Under New Jersey law, "negligence and breach of warranty are no longer viable as separate claims for harm caused by a defective product." *Oquendo v. Bettcher Indus., Inc.*, 939 F. Supp. 357, 3611 (D.N.J. 1996), *aff'd*, 118 F.3d 1577 (3d Cir. 1997); *see Port Auth. of New York & New Jersey v. Arcadian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) ("Under New Jersey law negligence is no longer viable as a separate claim for harm caused by a defective product."); *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398 (App. Div. 1991) ("[C]ommon-law actions for negligence or breach of warranties (except express warranties) are subsumed within the [NJPLA].").  Indeed, New Jersey federal and state courts have consistently dismissed common law claims for negligence and breach of implied warranty as subsumed by the NJPLA, whenever those claims are grounded in harm caused by a defective product. *See, e.g.*, *Arcadian Corp.*, 189 F.3d at 313 (dismissing negligence claim as subsumed by NJPLA); *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015) ("[Plaintiff's] claims for breach of implied warranty (Count I), negligence (Count II), and strict liability (Count III) are subsumed by the PLA."); *Tirrell*, 248 N.J. Super. at 399 (dismissing claims for negligence and breach of warranty as subsumed by NJPLA); *see also Universal Underwriters Ins. Grp. v. Pub. Serv. Elec. & Gas Co.*, 103 F. Supp. 2d 744, 746 (D.N.J. 2000)

("New Jersey courts interpreting the [NJPLA] have consistently held that . . . common law actions for negligence and breach of implied warranty are subsumed by the NJPLA when the claims asserted fall within the act's purview."). Accordingly, Plaintiff's claim for breach of implied warranty, as well as Plaintiff's claim for negligent design or manufacture, are subsumed by the NJPLA.

Nonetheless, Plaintiff argues that, to the extent his negligence claim is based on Defendants' failure to "properly transport, move, and store the ladder in a safe and usable condition," that claim is not subsumed by the NJPLA. *See* Am. Compl. at ¶¶ 68-70. In that regard, Plaintiff maintains that the NJPLA does not preclude negligence actions where a plaintiff alleges that his or her injury was caused by independent conduct of the seller, rather than from the product itself. While Defendants concede that, under certain circumstances, a plaintiff may assert negligence claims against a seller that are not subsumed by the NJPLA, *see* Defs.' Reply 8, Defendants maintain that the Amended Complaint does not articulate any facts supporting Plaintiff's claim that Defendants breached a duty to properly transport, move, or store the Ladder. The Court agrees.

Although the NJPLA generally subsumes common law negligence claims alleging that a plaintiff suffered harm as a result of a defective product itself, the NJPLA does not subsume negligence claims where the alleged harm stems from the independent conduct of a defendant. *See*, *e.g.*, *Universal Underwriters Ins. Grp. v. Pub. Serv. Elec. & Gas Co.*, 103 F. Supp. 2d 744, 748 (D.N.J. 2000) (finding that the plaintiff's negligence claim did not fall under the NJPLA, where "the claim asserted by the Plaintiff is not related to a defect in the product (i.e. the electricity), but rather to the maintenance and oversight of PSE & G's emergency response service."); *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530 (D.N.J. 1999) (holding that a

claim for negligent installation was not subsumed by the NJPLA, because the claim was grounded in the conduct of the defendant, rather than harm caused by a defective product).

Here, however, to the extent that Plaintiff's negligence claim is based on Defendants' alleged failure to properly transport, move, and store the Ladder, the Amended Complaint fails to meet the plausibility standard set forth in *Twombly* and *Iqbal*. In that regard, under New Jersey law, "a cause of action founded upon negligence involves a breach of a duty of care that causes injury." *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987). While Plaintiff alleges that Defendants breached their duty to properly transport, move, and store the Ladder, the Amended Complaint is pled entirely in conclusory fashion, devoid of any facts to support that claim. For example, Plaintiff does not set forth any facts regarding the storage or transportation of the product, or attempt to explain how Defendants' allegedly negligent storage or transport caused the product to be defective. Nor does Plaintiff specify which particular individual defendant had control over the Ladder during different stages of the distribution process, and thus, when those individual defendants allegedly had a duty to transport, move, or store the Ladder, or when those individual defendants breached that duty. Accordingly, to the extent Plaintiff's negligence claim is based on Defendants' duty to transport, move, or store the Ladder, that claim is dismissed without prejudice.

### B.       Express Warranty Claim (Count III)

Count III of the Amended Complaint asserts a claim for breach of express warranty, pursuant to both common law and N.J.S.A. § 12A:2-101 *et seq.* To state a claim for breach of express warranty under New Jersey law, a plaintiff must allege: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product

ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam*

*Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011). The New Jersey version of the

Uniform Commercial Code, N.J.S.A. § 12A:2-313, defines an "express warranty" as follows:

> (1) Express warranties by the seller are created as follows:
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>>
>> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>>
>> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.J.S.A. § 12A:2-313. "A statement can amount to a warranty, even if unintended to be such by

the seller, 'if it could fairly be understood ... to constitute an affirmation or representation that the

[product] possesse[s] a certain quality or capacity relating to future performance.'" *Volin*, 189 F.

Supp. 3d at 420 (citation omitted). However, "an affirmation merely of the value of the goods or

a statement purporting to be merely the seller's opinion or commendation of the goods does not

create a warranty." N.J.S.A. § 12A:2-313(2). Additionally, "statements that are nothing more

than mere puffery are not considered specific enough to create an express warranty." *Snyder*,

792 F. Supp. 2d at 721. Whether a "given statement constitutes an express warranty is normally

a question of fact for the jury." *Id.* at 721-22 (citation omitted).

Here, Defendants argue that Plaintiff has failed to identify any specific affirmations or

promises to support a claim for breach of express warranty.[6] However, contrary to Defendants'

---

[6] I note that in their initial motion to dismiss, Defendants indicated that they "do not challenge the legal viability of [the express warranty] cause of action at this time in this pleading." Defs.' Mot. to Dismiss at 4 n. 1. However, Defendants went on to raise arguments regarding the sufficiency of Plaintiff's express warranty claim in their reply brief, which deprived Plaintiff of

contention, the Amended Complaint asserts that Defendants expressly warranted, in their manuals, package labeling, and other materials, that the Ladder supports a "225 lb[] load capacity," and that the Ladder has "durable shoes that rest flat on [a] slip resistant pad or [are] held in spur position with [the] SHU-Lock feature."  Am. Compl. at ¶¶ 50-52.  Plaintiff further alleges that he relied on those warranties in purchasing the Ladder, and thus, that the warranties became part of the basis of Plaintiff's bargain.  *Id.* at ¶ 53.  Finally, Plaintiff alleges that the Ladder did not conform to Defendants' affirmations.  *Id.* at ¶ 54.  Because Plaintiff has identified specific affirmations made by Defendants, the Court finds that Plaintiff's cause of action for breach of express warranty is sufficient to survive the motion to dismiss stage.  *See Snyder*, 792 F. Supp. 2d at 722 ("At the motion to dismiss stage, it is enough that Plaintiffs provide more than 'bald assertions,' and identify specific affirmations by Defendant that could be found to constitute an express warranty.").  Whether those affirmations constitute puffery may be resolved at a later stage of the litigation.  *See id.* at 723.  Accordingly, Defendants' motion to dismiss Plaintiff's breach of express warranty claim is denied.

### C.      MMWA Claim (Count IV)

Count IV of the Amended Complaint alleges that Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, "by failing to comply with the implied and written warranties defendants made to plaintiff."  Am. Compl. ¶ 62.  The MMWA provides a private right of action in federal court for consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty."  15 U.S.C. § 2310(d)(1).  MMWA claims are coextensive with underlying

---

an opportunity to respond.  While that strategy should be discouraged, the Court nonetheless finds that Plaintiff has sufficiently alleged a cause of action for breach of express warranty.

state law breach of warranty claims and are therefore, dependent on, and derivative of, said state claims for survival in a motion to dismiss. *Volin*, 189 F. Supp. 3d. at 421-422 ("Thus, this claim will go forward to the extent that the breach of warranty claims remain viable."); *see also Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010) (finding that because the plaintiff's breach of implied and express warranty claims were dismissed, so too was his Magnuson-Moss claim). Therefore, because I have found that Plaintiff has adequately alleged a breach of express warranty claim, Plaintiff's accompanying MMWA claim remains viable. Defendants' motion to dismiss Count IV is denied.

### D.    Punitive Damages, Attorneys' Fees, and Treble Damages

The Amended Complaint contains a request for, *inter* alia, punitive damages, attorneys' fees, and treble damages. Defendants seek dismissal of those requests, on the grounds that those awards are not available under the NJPLA, MMWA, or for breach of express warranty.

First, the Court notes that Plaintiff has not cited any statutory provisions or case law in support of his argument that punitive damages are available under either the MMWA or for breach of express warranty. To the contrary, it is well-established under New Jersey that punitive damages are not available for breach of contract or breach of warranty, absent "a showing that defendant also breached a duty independent of that created by the contract." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1194 (3d Cir. 1993); *see First Valley Leasing, Inc. v. Goushy*, 795 F. Supp. 693, 700 (D.N.J. 1992) ("In all but a very limited class of cases punitive damages are not awarded for breach of contract."); *Ellmex Const. Co. v. Republic Ins. Co.*, 202 N.J. Super. 195, 207 (App. Div. 1985) ("[P]unitive damages are not available in contract."); *see also Lawton v. Basic Research, L.L.C.*, No. 10-6341 2011 WL 1321567, at *4 (D.N.J. Apr. 4, 2011) ("[C]ourts have routinely held that '[w]here the essence of a cause of

action is limited to a breach of [a commercial] contract, punitive damages are not appropriate regardless of the nature of the conduct constituting the breach.' Thus, plaintiff's breach of warranty and unjust enrichment claims also do not support any finding of punitive damages . . . .") (internal citations omitted). Accordingly, because Plaintiff's claims for breach of express warranty and violation of the MMWA are contractual in nature, and because Plaintiff has not alleged that Defendants breached any special duty independent breach of the contract, Plaintiff cannot recover punitive damages on his breach of express warranty and MWWA claims.

Moreover, to the extent that punitive damages are available under the NJPLA, Plaintiff's claim for punitive damages is governed by the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9 *et seq.* To establish a claim for punitive damages under the Act, a plaintiff must prove, "by clear and convincing evidence, that . . . the defendant's acts or omissions . . . were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15–5.12. "Actual malice" is defined as "an intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. 2A:15–5.10. "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.*

Negligent, even grossly negligent, conduct cannot form the basis of a punitive damages claim. *Smith v. Whitaker*, 160 N.J. 221, 242 (1999). "There must be circumstances of aggravation or outrage, which may consist of such a conscious and deliberate disregard of the interests of others that the [defendant's] conduct may be called wanton and willful." *Dong v. Alape*, 361 N.J. Super. 106, 116 (App. Div. 2003). This "standard can be established if the defendant knew or had reason to know of circumstances which would bring home to the ordinary

reasonable person the highly dangerous character of his or her conduct." *Id.* at 116–17 (citing

*McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288, 306 (1970)).  The Punitive Damages Act further

instructs that:

> In determining whether punitive damages are to be awarded, the trier of fact shall consider all relevant evidence, including but not limited to, the following:
>
>> (1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct;
>>
>> (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct;
>>
>> (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and
>>
>> (4) The duration of the conduct or any concealment of it by the defendant.

N.J.S.A. 2A:15-5.12(b).  These factors are non-exclusive.  *See Pavlova v. Mint Management*

*Corp.*, 375 N.J. Super. 397, 404 (App. Div. 2005).

Overall, courts have described the punitive damages standard as a strict one; punitive

damages are limited to only "exceptional cases."  *Id*; *see also Dong*, 361 N.J. Super. at 116

(noting that defendant's conduct must be "particularly egregious").  Moreover, because punitive

damage awards are not designed to compensate plaintiffs, an award does not depend upon the

extent of injury suffered.  *See Smith*, 160 N.J. at 225.

Here, Plaintiff has not alleged that Defendants acted with actual malice.  Nor does the

Amended Complaint contain any factual allegations to support a finding that Defendants acted

with wanton or willful disregard of persons who could foreseeably be harmed by Defendants'

conduct.  To that end, while the Amended Complaint generally alleges that Defendants were

aware of defects in the Ladder, yet continued selling that product, Plaintiff has not pled any facts

in support of those claims.  For example, Plaintiff fails to plead the requisite facts to prove

Defendants' "awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct." N.J.S.A. 2A:15-5.12(b). In short, while the Amended Complaint alleges the facts necessary to make out the prima facie case for Plaintiff's NJPLA claim, it does not contain the added element of egregious conduct necessary for the Court to award punitive damages. *See Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1034 (D.N.J. 1995) ("[A]n award of punitive damages requires a showing of culpability in excess of that needed to state the bare bones elements of the [claim]."). Therefore, because Plaintiff failed to allege any facts showing that Defendants acted with "actual malice" or "wanton and willful disregard," Plaintiff's claims for punitive damages are dismissed.[7]

Second, with respect to Plaintiff's request for an award of attorneys' fees, the only remaining count in the Amended Complaint that allows an award of attorneys' fees is Plaintiff's MMWA claim. *See* 15 U.S.C. § 2310(d)(2).[8] Because the MMWA allows for an award of attorneys' fees, Defendants' motion to dismiss Plaintiff's request for attorneys' fees is denied as to that claim.

---

[7] Should Plaintiff replead his claim for negligent transport, moving, or storage, and include a request for punitive damages, he must meet the standard set forth under the New Jersey Punitive Damages Act.

[8] The MMWA provides that:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(2).

Finally, the Court will dismiss Plaintiff's claims for treble damages. While treble damages are available under the NJCFA, *see* N.J.S.A. 56:8-19 ("In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest."), the Court has already found that dismissal of Plaintiff's NJCFA claim is warranted. Because Plaintiff has not identified any other statutory provision or common law claim under which he seeks treble damages, nor stated any facts suggesting that treble damages are appropriate, Plaintiff's claim for treble damages is dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims pursuant to the NJCFA (Count II), for breach of implied warranty (Count III), and for negligent manufacture or design (Count VI) are dismissed with prejudice as subsumed by the NJPLA. The motion to dismiss is denied as to Plaintiff's claims for breach of express warranty (Count III) and for violation of the MMWA (Count IV). Plaintiff's negligent transport, moving, or storage claim (Count VI) is dismissed without prejudice, and Plaintiff is given leave to amend that claim within fifteen (15) days of the date of the Order accompanying this Opinion. Finally, Defendants' motion to dismiss is granted as to Plaintiff's request for punitive and treble damages, and denied as to Plaintiff's request for an award of attorney's fees under the MMWA.


Dated:  August 8, 2017                                  /s/ Freda L. Wolfson
                                                        Hon. Freda L. Wolfson
                                                        United States District Judge